UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------

14 Civ. 00004 (LGS)
Bankruptcy case 09-B-50026 (REG)

Motors Liquidation Company
                Debtors.

----------------------------------------------------------/

## APPELLANT'S APPEAL BREIF

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3/7/2014

SHERIF RAFIK KODSY
APPELLANT/PRO'SE
561-294-3046
605 N. RIVERSIDE DRIVE
POMPANO BEACH, FLORIDA 33062

MAP - 7 2014

PRO SE

# TABLE OF CONTENTS

**PAGE #**

INTRODUCTION.................................................................2

SUMMARY JUDGMENT STANDARD.........................................7

STATEMENT OF FACTS.....................................................9

STATEMENT OF THE CASE................................................16

ARGUMENT...................................................................17

LEGAL ARGUMENT..........................................................18

CONCLUSION.................................................................26

CERTIFICATE OF SERVICE................................................28

# TABLE OF CITATIONS

**Page #**

S. Cotton Oil Co. v. Anderson, 86 So. 629 (Fla. 1920) (holding that an automobile is a dangerous instrumentality)........................................5

Kraemer v. General Motors Acceptance Corp., 572 So. 2d 1363, 1365 (Fla. 1990)..............................................................................5

Meister, 462 So. 2d at 1072 (emphasis omitted) (quoting Jordan v. Kelson, 299 So. 2d 109, 111 (Fla. 4th DCA 1974))...........................................5

Meister, 462 So. 2d at 1071 (golf carts); see also id. at 1072 (recognizing trucks and buses as dangerous instrumentalities)................................5

Orefice v. Albert, 237 So. 2d 142, 145 (Fla. 1970) (airplanes).................6

Eagle Stevedores, Inc. v. Thomas, 145 So. 2d 551, 552 (Fla. 3d DCA 1962) (tow-motors)...............................................................................6

FLA. CONST. art. I, § 21......................................................................6

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 69, at 499 (5th ed. 1984)..........................................................6

Greenman v. Yuba Power Prods., 377 P.2d 897 (Cal. 1963) (holding non-negligent manufacturer liable for plaintiff's injuries caused by defectively designed power tool)......................................................................6

Owen v. City of Independence, 445 U.S. 622, 657 (1980)......................6

Nowak v. Nowak, 394 A.2d 716, 723 (Conn. 1978)............................6

KEETON, *supra* note 15, at 500...............................................................6

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)..................................................................7

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)............................................................................7

*id.* at 255, 106 S.Ct. 2505……………………………………..…………7

*id.,* 477 U.S. at 247, 106 S.Ct. 2505……………………..…..…………..7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)……………………………………7

*Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir.2000)…………………………………………………………8

*Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994)…….....8

*[659 F.Supp.2d 1001]*…..……………………………………………8

*Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992)……………………………………………………………8

*Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989)……………8

*Celotex,* 477 U.S. at 322, 106 S.Ct. 2548……………………………………8

*Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir.2003)………………8

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548……………………………………8

*Celotex,* 477 U.S. at 325, 106 S.Ct. 2548……………………………………8

*Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001)……………9

*Stagman v. Ryan* 176 F.3d 986, 995 (7th Cir.1999)……………………..9

*Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993)……….9

4TH DCA CASE NO. 4D13-3513 ……………………………………16

4th DCA CASE NO. 4D13-1569……………………………………16

Hull v. Merck & Co., inc. 758 F.2d 1474 (11th Cir. 1985……………………18

Lynford GROGG, plaintiff v. CSX TRANSPORTATION, INC., Defendant, 659 F.Supp.2d 998 (2009)………………………………………………19

*Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003) (emphasis added) (citing Tex. Bus. & Commerce Code. Ann. §§ 2.314, 2.607(c)(1), 2.714, 2.715 (1994))..................................................20

Turner v. General Motors Corp., 514 S.W.2d 497 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). ...........................................20

Id. at 504 and 506. In General Motors Corp. v. Turner............................21

Turner v. General Motors Corp., 584 S.W.2d 844, 848 (Tex. 1979)........22

Signal Oil & Gas Co. v. Universal Oil Products, 572 S.W.2d 320(Tex.1978)..................................................................................22

Gonzales v. Caterpillar Tractor Co., 571 S.W.2d 867 (Tex.1978)............22

Miller v. Bock Laundry Machine Co., 568 S.W.2d 648 (Tex.1977)...........22

General Motors Corp. v. Simmons, 558 S.W.2d 855 (Tex.1977)..............22

Rourke v. Garza, 530 S.W.2d 794 (Tex.1975)...........................................22

General Motors Corp. v. Simmons, 545 S.W.2d 502 (Tex.Civ.App.1976), writ granted on other grounds, 558 S.W.2d 855 (Tex.1977)..................24

§ 402A of the RESTATEMENT (SECOND) OF TORTS....................24

Pyatt v. Engel Equipment, Inc., 17 Ill.App.3d 1070, 309 N.E.2d 225 (3rd Dist. 1974)...............................................................................24

Mitchell v. Fruehauf Corp., 568 F.2d at 1145....................................24

Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir.1973)..............................................................................24

General Motors Corp. v. Castaneda, 980 S.W.2d 777 (Tex.App. San Antonio 1998)..................................................................................24

659 F.Supp.2d 998 (2009).......................................................25

Id. at 780 and 781……………………………………………………..25

Coleman, 40 S.W.3d at 550……………………………………………...25

## INTRODUCTION

Comes now appellant Mr. Sherif Rafik Kodsy, the victim of Negligence from a product defect and fraudulent misrepresentation of a dangerous instrument, files this appeal, from the order that alleged appellant was not entitled to a setoff, because plaintiff/claimant herein, has not showed a probable cause of entitlement.

Plaintiff/appellant, herein is self represented herein as pro'se, because plaintiff could not obtain legal counsel that was knowledgeable in auto mechanics, where the different lawyers contacted, did not want to further represent plaintiff after a pro'se filing and where the defendants' were in Bankruptcy.

This proceeding herein was pending a second trial for a product liability, defective motor vehicle, which is now pending an appeal for vexatious litigant, before the Fourth District Court of Appeals in Palm Beach County.

Kodsy, had pending claims in other matters, when this subject vehicle was purchased , which resulted in lawsuits guided by time limitations, after this suit herein, which was filed on March 31, 2009.

The purchase date of the subject vehicle, a 2008 HUMMER H2, purchase from Coral Cadillac, inc., on August 19th, 2008, from the dealer for the defendant/manufacturer of HUMMER, division, of the General Motors,

Corporation.

The first and only trial was only permitted for a LEMON LAW, herein, which was because the defendants, were in Bankruptcy, where in that court the jury was mostly women that were not mechanically inclined and where the GM'S attorney discriminated against Kodsy, for having an unrelated felony arrest that was so remote in time to gain sympathy for its client's maliciousness and negligence in safety, where the jury found and recognized a defect, however the defendants' agents conspired to conceal the defects of nonconformity, to avoid a liability, where they documented several repair for an **ELEVATED VIBRATION.**

In the LEMON LAW, trial the jury was not permitted to prosecute the defendants' except for a limited warranty proceeding, where appellant had a full warranty and the limited repairs did not fix the subject vehicle, which it was sold to plaintiff, with a conscious disregard with a known high risk of probable harm to others, which was further misrepresented its repairs to conceal its elevated vibration defects.

The subject vehicle service repairs, documented a continuous elevated vibration, which was not fixed prior to its sale to plaintiff/appellant, herein, and where there were no warnings or safety gear or precautions, provided to or communicated to the ultimate consumer, to lower and limit the daily and

continuous use of an OFF-ROAD vehicle with an obvious elevated vibration seen and felt through out the subject vehicle's chassis, steering wheel and cab ON-ROAD.

The continuous whole-body elevated vibration exposures from the subject vehicle's elevated vibration residual non-conformity, caused Mr. Sherif Rafik Kodsy, multiple injuries, some are known and other long term injuries are suspected but not yet detected or documented, due to limited physical evaluations.

The headaches neural injuries, developed within an hour of continuous use and physical muscoskeletal injuries did develop later from the continued unwarned daily use with the continuous use with the high vibration exposures.

Herein, appellant suffered from sinusitis, a form of brain injury,  pains and strains in the heart, where the elevated vibration exposures, caused migraine headaches, heart aches, an umbilical hernia, and affected and compromised vision, and caused a knee ligament to tear from being over-vibrated, and it permanently affected appellant's tolerances to bio-mechanical exposures, which limits traveling and driving.

This Honorable court has jurisdiction to review this appeal, from a request for a Summary Judgment, which the Honorable judge Robert

Gerber, denied the motion without a hearing.

**Quoting Florida law:**

**S. Cotton Oil Co. v. Anderson, 86 So. 629 (Fla. 1920) (holding that an automobile is a dangerous instrumentality);**

The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. **Kraemer v. General Motors Acceptance Corp., 572 So. 2d 1363, 1365 (Fla. 1990).**

The doctrine is based on "the practical fact that the owner of an instrumentality, which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent." **Meister, 462 So. 2d at 1072 (emphasis omitted) (quoting Jordan v. Kelson, 299 So. 2d 109, 111 (Fla. 4th DCA 1974)).**

In **Southern Cotton Oil Co.**, Florida courts have extended the doctrine to golf carts, trucks, buses, airplanes, tow-motors, and other motorized vehicles. See, e.g., **Meister, 462 So. 2d at 1071 (golf carts); see**

**also id. at 1072 (recognizing trucks and buses as dangerous**

**instrumentalities); Orefice v. Albert, 237 So. 2d 142, 145 (Fla. 1970)**

**(airplanes); Eagle Stevedores, Inc. v. Thomas, 145 So. 2d 551, 552 (Fla.**

**3d DCA 1962) (tow-motors).**

 **FLA. CONST. art. I, § 21.** This section of the Florida Constitution

provides: "The courts shall be open to every person for redress of any injury,

and justice shall be administered without sale, denial or delay."

 *Id.* **W. PAGE KEETON ET AL., PROSSER AND KEETON ON**

**THE LAW OF TORTS § 69, at 499 (5th ed. 1984).**

 *Id.* Vicarious liability in tort is analogous to strict products liability in

which a manufacturer is liable for injuries caused by a defective product,

even in the absence of manufacturer fault. *See* **Greenman v. Yuba Power**

**Prods., 377 P.2d 897 (Cal. 1963) (holding non-negligent manufacturer**

**liable for plaintiff's injuries caused by defectively designed power tool).**

*See* **Owen v. City of Independence, 445 U.S. 622, 657 (1980).**

**Nowak v. Nowak, 394 A.2d 716, 723 (Conn. 1978).** This notion is related

to the enterprise theory of liability which imposes vicarious liability on

businesses that routinely engage in activities that may cause harm to

innocent victims. *See* **KEETON,** *supra* **note 15, at 500.**

 In enunciating the dangerous instrumentality doctrine as applied to

automobiles, the **Florida Supreme Court in *Southern Cotton Oil Co. v. Anderson*** integrated its social vision of a more dangerous society due to the invention of the automobile with ideals of fairness.

**Dangerous Instrumentality** is defined as *Any article that is inherently hazardous or has the potential for harming people through its careless use.*

## STATEMENT OF FACTS

Herein the defendants' intent was to sell the subject defective motor vehicle, a 2008 Hummer H2, without disclosure of a defect, which was sold at a Georgia Auction to Coral Cadillac, inc., who then sold the subject vehicle to plaintiff with a full four year manufacturer's warranty, where the manufacturer only provided a limited warranty herein, because of its Bankruptcy status, where the defendants', exercised negligence to safety and health by way of a limited warranty instead of a full warranty.

The defendants' bankruptcy filing was to avoid a liability to plaintiff/appellant, herein, after it was discovered an irregular elevated vibration in the subject vehicle, which their recklessness resulted from their intent to not test and remedy the defect of elevated vibrations accordingly to its published factory specifications, which is evident by their conspired and continued denial of a bio-mechanical defect, where the work orders document a non-conformity of several issues plus a residual elevated vibration remaining, but untested for its high vibration severity levels.

The repairs extended could not fix the elevated vibration transmitted through the uninsulated cab, steering wheel and chassis, that caused injuries, from continued unwarned exposures of prolonged use to elevated vibrations.

Where the defendants' counselors in Circuit Court, pursued fraudulent

concealment from the court regarding the discovered and remaining non-conformities of elevated vibrations, which caused multiple documented injuries to Mr. Sherif Rafik Kodsy, which those injuries were similar to the ones expected from over exposures to elevated whole body vibrations, described and detected in the subject vehicle.

The subject vehicle, was a 2008 HUMMER H2, a utility vehicle, SUV, an OFF road vehicle **without** an off and ON switch, to alternate or alienate to its ON-Road design conformities, when on road, which contributed to a continuous elevated Vibration in the subject vehicle and continuous correlating injuries to its subject vehicle occupants' from prolonged exposures.

IN addition to, the defendants' agent had maliciously offered the subject vehicle for sale on **EBAY** , as used, to the public without a disclosure statement or warnings, about where or what the subject vehicle was used for previously, where the manufacturer later alleged it to be previously used by the manufacturer allegedly as a demonstrator a Show Truck, not intended to be placed primarily in the stream of sales.

The subject vehicle's work orders and repairs describe and suggest otherwise a different theory and a non-conformity, where **the subject vehicle's whole underbody up to the engine mounts was submerged**

**under water**, where the subject vehicle's **whole under-body** was **rusted** and **brakes** and **tires** and **transmission** required replacements, **parts** and **repairs, (**where it further needed **new engine mounts** to further cushion and reduce the **engine torque vibes)**, which those type of repairs were not but partially completed by the defendants.

Included in the defendant's agents repair order 541007, alleging it had added weights to the exhaust, not a manufacturer's common or ordinary repair, which was yet another worthless attempt to reduce engine vibes.

Herein, the subject vehicle's physical condition suggests and correlates to damages caused thereof from **high water zone flooded vehicles,** where **the whole underbody was rusted on this subject vehicle with 230 miles on the odometer**, which allegedly was sold with an underbody rust preventative coating, that did not work.

The hopeless cosmetic repairs were partially completed by the Coral Cadillac, inc., the defendants' agent, where they alleged a rust preventative application to the subject vehicle's underbody was partially completed, in repair order #540280, page 3..

The subject vehicle only had **230 miles** on the odometer when it was sold as **USED** to plaintiff, by Coral Cadillac, inc,. which was to conceal its non-conformity(ies), where it included a dealer disclaimer but with a **4 yr.**

**or 50k** mile Manufacturer's warranty.

However herein, the manufacturer conspired to only extend a limited warranty, because it knew it could not conform the subject vehicle to its manufacturer's expected and advertised specifications for a bio-mechanical vibration.

Herein the appellees' are not likely to succeed at a new trial, because the Over-whelming evidence, describes a remaining, unmeasured, noticeable and irregular elevated vibration during its service inspections and after repairs that was completed.

The subject vehicle required a service soon after the subject vehicle was sold to plaintiff, which required more than one mechanical failures repairs in addition to the non-conformity repairs for an elevated vibration, which there elapsed approx.. 30 days out of service and over seven inspections, not including independent inspections.

The jury in the **Lemon Law trial** answered question one of the verdict form, describing a disabling nonconformity existed, where the defendants in that trial concealed and conspired the relevant facts;

1- That an elevated whole body vibration exposure can be deadly and certainly injurious to the daily user of their product.

2- That the subject vehicle was repaired, where the repairs completed by

the defendants' agents from Coral Cadillac, did not eliminate the elevated

vibrations, where the Schummacker Hummer dealer replaced tires to reduce

the elevated vibrations after those repairs, completed by the Coral Cadillac,

inc., while further independent mechanical inspections documented an

irregular elevated vibration, where the manufacturer later conspired with the

Coral Cadillac, inc., and the Schummacker Hummer dealer, because an

elevated vibration remained, where herein the Regional Service Manager for

the defendants', instructed them to not further provide any inspections or

repairs for the elevated vibrations that remained.

3- Tom Thornton the Regional Service Manager, further instructed its

Other service Maroone Chevrolet outlets to document, that the subject

vehicle elevated vibrations was a common trait for that type of vehicle, to

avoid a replacement vehicle or liability to plaintiff, where the discrimination

of Mr. Thornton, had described an expected and noticeable elevated

vibration under oath, and that no further conformity repairs were needed,

where the elevated vibrations remained noticeable and unwarned, after

the three tires replacements, which was the last service repair completed.

4- Herein it was alleged by the manufacturer's service agents that no

codes were found, where the irony of that statement, is evidence of malice

"no codes were found" ??,  where previously a repair for an excessive

vibration, had no codes, only a complaint, however since there was no improvement, after an alleged elevated vibration repair was completed, hence they alleged no codes were found,  without first conducting a bio-mechanical safety conformity test, out of State, because there were no facilities in Florida that conduct Bio-mechanical analysis and measurements for whole body elevated vibrations before releasing the subject vehicle back to plaintiff/appellant, for continued daily use.

5- The defendants' attorney Mr. Steven I. Klein, Alleged to the jury that plaintiff was a Convicted felon, to discriminate against plaintiff's knowledge and experience in auto mechanics,  where plaintiff was a <u>Licensed Building Specialty Contractor, class B and an Indoor Environmental Mold Expert,</u> where the non-relevant fact of a previous arrest was alleged to gain sympathy for General Motors and to discriminate against plaintiff pro'se, Mr.Sherif Kodsy, where over thirty years had passed for a non-relevant arrest of dishonesty.

6- The defendants' are not innocent in manufacturing a defective vehicle and they are not innocent from concealing that defect, by whole-saling the subject vehicle at a dealers Georgia auction, sold to its sales agent at Coral Cadillac, inc., to conceal its defects, without first warning its consumer of the subject vehicle's defective and unsafe condition.

7- The factual evidence herein is undisputed, where the subject vehicle was not placed in the common stream of sales because of a defect or condition, which clearly establishes a motive to defraud with careless disregard of Safety and Health of the end user, herein, Sherif Rafik Kodsy.

8- Kodsy succeeded in convincing the Lemon Law jury that a disabling defect existed in the subject vehicle when it was sold to plaintiff.

9- Argumento, hence the allegation of attempted conformities repairs by the defendants' is immaterial to the defendants' defenses, where the fact that those repairs were attempted for a detected elevated vibration is further evidence that the vehicle was defective, when it was sold to plaintiff, which it required NON-conformity repairs, where only limited repairs were authorized. Exhibit of work orders, in record of appeal index, exhibit four.

10-     Further all of the elevated vibration, attempted repairs completed by the defendants' could not had fixed a vibration defect as described by the defendants', where it was not documented for its Amplification Measurement, where the subject vehicle could not be Bio-mechanically tested or conformed to factory suggested settings, wherefore the defendants' failed to conform the subject vehicle according to its Machinery Directive and intended Manufacturer's Specifications.

## STATEMENT OF THE CASE

Appellant Kodsy, has a Federal right to represent himself as pro'se, where all other pro'se lawsuit filings were not meritless as the circuit court order states which is currently on appeal **4TH DCA CASE NO. 4D13-3513 and 4th DCA CASE NO. 4D13-1569.**

Appellant Kodsy, had not yet amended his complaints on those other claims Because of the tremendous time and money spent on this case and physical disabilities and because Kodsy, could not afford to hire an attorney to continue pursuing those claims of discrimination, recklessness, negligence and strict liability, which had caused plaintiff to be injured, physically disabled, mentally and financially limited.

The appellee's malice and bad faith extends to discriminate against appellant for seeking a remedy for an obvious and documented nonconformity defect, unwarned, which caused injuries to appellant, causing others and non party defendants' to discriminate against appellant herein and in other legal matters and proceedings, which were filed after this lawsuit in Palm Beach, Florida Circuit Court, filed in March 31, 2009.

## ARGUMENT

Herein the appellees' attorney's are attacking Kodsy, personally for being pro'se, where it brought non relevant summaries and orders to this proceeding, where those other cases are still pending and the complaints could be amended.

The fact of the appellees' intent to smear appellant's reputation and integrity is evident herein, where they extended and pursued such malicious actions to avoid a liability, where the facts are crystal clear for their fraudulent intent to conceal relevant facts from the court, by arguing non relevant facts, about other personal civil cases filed by Mr. Sherif Kodsy, as pro'se. now disabled and durressed victim of use of the defendants' product.

All lawsuits filed by appellant, were not loses as described, by the appellees', but they are pending prosecutions, where each case had it's own circumstances and causes of action.

**The Circuit trial court abused its discretion herein,** when it entered a final order declaring plaintiff a vexatious litigant and ordered a security of $35k, where it was not based on sound or relevant evidence and where the order was overreaching with discrimination against an injured pro'se plaintiff, who was a victim of conspired fraud and gross negligence, as well as discrimination of race, gender and financial status after prolonged use of a

dangerously defective vehicle, that put placed plaintiff bedside for months and almost killed **me** from the prolonged exacerbated vibrations magnitudes transferred through my body.

The malicious General Motors and its corporate agents filed for Bankruptcy, approx.. four months after plaintiff had filed this law suit in Palm Beach County, Florida, where it is obvious that their intent was to avoid their obligations to plaintiff/appellant, herein, and many other victims and creditors, hence Kodsy appellant, herein was the first to file suit for a bio-mechanical whole-body vibration defect, where many other victims are already dead or injured without correlating their injuries to their motor vehicle sold to them by the producer of bio-mechanical defective motors, the General Motors, Corp..

## LEGAL ARGUMENT

Contrary to **Hull v. Merck & Co., inc. 758 F.2d 1474 (11th Cir. 1985),** the harmful condition was not known to plaintiff, but reasonably known to the defendants, where the defendants' recklessness was in not Bio-mechanically testing the subject vehicle by a bio-mechanical expert in a specialty conformed setting, to determine and adjust to the subject vehicle's expected manufacturer's advertised specification settings.

Where herein the probability of harm to the product end user was

known to the defendants' but was not known to the consumer.

The subject vehicle, herein, was not measured by an expert in biomechanics, therefore it could not be repaired without first establishing a level of measurement to adhere to, where it was not warned to its consumer, which caused multiple injuries and damages from an obvious and documented continuous elevated vibration, observed and felt in the subject vehicle, herein.

**"The elements of a cause of action for breach of the implied warranty of Merchantability are:**

(1) *the defendant sold or leased a product to the plaintiff;*

(2) the product was unmerchantable;

(3) the plaintiff notified the defendant of the breach; and

(4) the plaintiff suffered injury**." *Polaris Indus., Inc. v. McDonald***, **119 S.W.3d 331, 336 (Tex. App.—Tyler 2003) (emphasis added) (citing Tex. Bus. & Commerce Code. Ann. §§ 2.314, 2.607(c)(1), 2.714, 2.715 (1994)).**

In Texas, the Crashworthiness Doctrine and the crashworthiness issue was initially established in **Turner v. General Motors Corp., 514 S.W.2d 497 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).** The case dealt with lawsuit in which a motorist sued General

Motors and the dealer for injuries suffered when the automobile's roof collapsed in a rollover. The Texas court weighed in on the side of the injured motorist and Larsen holding that "an automobile manufacturer may be held strictly liable for a defective design which produces injuries, but not the accident." Id. at 504. In reaching that conclusion, the Texas court rejected General Motors's arguments that courts lacked the expertise to deal with complex issues of safety design and that allowing such suits would wreak havoc on the manufacturers' ability to do business. **Id. at 506. In General Motors Corp. v. Turner**, Texas Supreme Court squarely rejected this any type of balancing test for crashworthiness cases, noting that the crashworthiness doctrine was merely a logical extension of long-articulated principles of Texas products liability law and that cases asserting the doctrine were to be charged as any design defect case.  More specifically, the court stated that "there is no valid distinction in strict liability between a conscious design defect causing an accident and a conscious design defect causing an injury. By the same token, there is no rational basis for a difference in the manner of submission of the issues to be determined by the fact finder. We have not required a balancing of enumerated factors in jury

submission by our previous writings, and, as stated earlier, we
disapprove the ruling of the Court of Civil Appeals that such is required
in a crashworthiness case." **Turner v. General Motors Corp., 584
S.W.2d 844, 848 (Tex. 1979).**

"Unreasonably dangerous' means dangerous to an extent beyond
that which would be contemplated by the ordinary consumer who
purchases it, with the ordinary knowledge common to the community
as to its characteristics.

See **Signal Oil & Gas Co. v. Universal Oil Products, 572 S.W.2d 320
(Tex.1978); Gonzales v. Caterpillar Tractor Co., 571 S.W.2d 867
(Tex.1978); Miller v. Bock Laundry Machine Co., 568 S.W.2d 648
(Tex.1977); General Motors Corp. v. Simmons, 558 S.W.2d 855
(Tex.1977); and Rourke v. Garza, 530 S.W.2d 794 (Tex.1975).** This
definition was approved by the Court of Civil Appeals in the venue
appeal of the case before us now, although the definition was
considered in a different context.

In any event, any error in the failure to submit the prudent manufacturer
element of the disjunctive test was harmless error. There is no complaint that
any evidence offered by General Motors relative to this was excluded. The
jury found that the automobile was defectively designed under an instruction
incorporating the ordinary consumer test. It was immaterial whether the jury

might have also found that the roof structure was defectively designed from the standpoint of the prudent manufacturer test.

General Motors and Kliesing further contend that the definition of "unreasonably dangerous" given by the trial court was erroneous in not requiring that the expectations of the ordinary consumer be reasonable. It is argued that this, too, is required under our writings in Henderson and Hopkins. Again we disagree. The parties do not cite to an authority, and we have found none, requiring, or not, the addition of the reasonable expectation concept to the definition.

The Court of Civil Appeals found the charge here in question to be defective in other respects but no point was made of the definition of unreasonably dangerous in terms of the ordinary consumer with the ordinary knowledge common to the community.

**HEREIN,** The subject vehicle's repair orders document the defects, where it would be immaterial if the appellee's attempted a repair that could not possibly fix an inherent defect of elevated vibrations, which was described by the defendants' agents, where a vibration measurement was not conducted or performed at any time during the repairs to document a repair attempt, which the prolonged use of the off road subject vehicle used daily on road, caused a whole lot of body elevated vibration exposures, which caused injuries, which was further without a manufacturer's warning

for prolonged use daily on-road and off-road.

The court in **General Motors Corp. v. Simmons, 545 S.W.2d 502 (Tex.Civ.App.1976), writ granted on other grounds, 558 S.W.2d 855 (Tex.1977),** considered the contention that the court's definition of unreasonably dangerous should include the element of the reasonable expectations of the ordinary consumer as to the safety of the product. The court pointed out that the definition under attack was taken from the language used in **§ 402A of the RESTATEMENT (SECOND) OF TORTS**, comment (i); and that the court could find no Texas case where this particular objection had been discussed. The court cited the suggestion in **Pyatt v. Engel Equipment, Inc., 17 Ill.App.3d 1070, 309 N.E.2d 225 (3rd Dist. 1974),** that the comment (i) definition in its reference to ordinary use and ordinary knowledge carried the connotation of the reasonable man standard. See also **Mitchell v. Fruehauf Corp., 568 F.2d at 1145**, where it was said that the balancing test there urged, i. e., the balancing of risks, utility and costs of the current and alternative design, was simply an expression of the concept of unreasonably dangerous; and, quoting from **Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir. 1973)** (interpreting Texas law) that "unreasonably dangerous" is "a concept that necessarily implies a balancing of a product's utility against the danger."

In **General Motors Corp. v. Castaneda, 980 S.W.2d 777 (Tex.App.—**

**San Antonio 1998**, pet. denied), in an opinion authored by current Texas Supreme Court Justice Paul Green, the court approved the holding in Shipp. The court held General Motors was incorrect in its contention that the plaintiff was required to quantify with precision the degree of enhancement. Id. at 780. The court found the plaintiff's burden was merely to show the defect was a producing cause the injury and, "if two or more causes produce a single injury, the jury may attribute the injury to any or all of the causes. . . . The burden lies with the defendants to allocate their respective responsibilities." Id. at 781 (cites omitted). Even if it were not necessary to prove a defect enhanced an injury, it is advisable to attempt to show enhanced damages. At least one court has held that proving a defect enhanced an injury is proof the defect is one of the producing causes of injury. **Coleman, 40 S.W.3d at 550.**

Herein, appellant Kodsy, produced and filed work orders produced by the defendants' agents, which document an irregular elevated vibration remaining in the subject vehicle, which was not tested for its magnitude, where appellant was not afforded the opportunity to have a jury trial for manufacturer's liability(ies) for injuries associated with the whole body vibrations present in the subject vehicle.

## CONCLUSION

Herein appellant request's a fair proceeding without discrimination for appearing as pro'se.

This case should be a class action lawsuit, but since plaintiff is not a lawyer the defendant/debtors will benefit enormously, because this claim would be the only elevated vibration liability claim by Sherif Rafik Kodsy, and not all **HUMMER H2** users and occupants.

Plaintiff , wants to clarify that previously he owned a Hummer H2, without the elevated vibrations that was detected and present in the subject vehicle, hence not all Hummer H2s are defective, but the subject vehicle was not primarily placed in the stream of sales due to its non-conformities, hence not warned, which caused injuries, which was defective and remains defective according to its work repair orders, unwarned and unmeasured.

Claimant should be entitled to recover the unsecured claim of $15,000,000 or a setoff of a portion, thereof.

The defendant, manufacturer, should be warned and duly noticed for its bio-mechanically defective  unmeasured motor vehicles, when a complaint for elevated vibration is produced to be a chief and obvious complaint of  a discomfort level in the subject vehicle, where injuries are susceptible and probable from continued unmeasured elevated vibration use.

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY THAT A TRUE AND CORRECT COPY OF THE

FOREGOING INSTRUMENT WAS E-MAILED TO THE

DEFENDANTS' COUNSEL OF RECORD, ON MARCH 5TH, 2014.

--------------------------------------------------------------
**SHERIF R. KODSY**
**APPELLANT / PRO'SE**
**605 N. RIVERSIDE DRIVE**
**POMPANO BEACH, FLORIDA, 33020**
**561-294-3046**