UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _____5/6/14____

In re

Motors Liquidation Company
Debtors.

14 Civ. 00004 (LGS)
BANKRUPTCY case 09-B-50026(REG)

------------------------------------------------------------/

## APPELLANT'S RESPONSE TO APPELLEE'S ANSWER

Comes now plaintiff/appellant, herein as pro'se , humbly responds to

appellees' answer.

District courts are vested with appellate jurisdiction over bankruptcy

court rulings pursuant to **28 U.S.C. § 158(a),** and may "affirm, modify, or

reverse a bankruptcy judge's judgment, order or decree." **Fed R. Bankr.P.**

**8013.** We review the legal conclusions of the Bankruptcy Court *de novo,* and

its findings of fact under the clearly erroneous standard. *See* **Bay Harbour**

**Mgmt, L.C. v. Lehman Bros. Holdings, Inc.** *(In re **Lehman Bros.**

**Holdings, Inc.),** 415 B.R. 77, 83 (S.D.N.Y.2009) (citing *Applied Theory*

*Corp. v. Halifax Fund, L.P. (In re Applied Theory Corp.),* 493 F.3d 82, 85

(2d Cir.2007)). The approval of a sale of assets under section 363 of the

Bankruptcy Code is generally reviewed for abuse of discretion. *See In re*

**Chrysler LLC, 576 F.3d at 119** (discussing the discretionary test of *Comm.*

*of Equity Sec. **Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063**

**(2d Cir.1983)).** A bankruptcy court abuses its discretion when it arrives at

"(i) a decision resting on an error of law (such **[428 B.R. 52]** as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." ***Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 678 (2d Cir.2003)*** (internal quotation and alteration marks omitted).

The appellees' are misleading this honorable court to believe that appellant is abusing the judicial system, where appellant is one injured and disabled person from use of the appellees' product, and almost died from continued unwarned, elevated vibration, which was an unmeasured elevated vibration threshold that was neglected by the appellees' agents, in careless disregard for the health and safety of the consumer who continuous to use the subject motor vehicle a 2008 HUMMER H2.

The facts are clear appellees' sold a defective vehicle to appellant and the work orders document several uncommon repairs that could not fix the elevated whole body vibrations, that were noticeable and felt in the subject vehicle.

This action was already tried once in the Palm Beach Circuit Court by way of a limited warranty of a Lemon Law proceeding, where the jury found a defect in the subject vehicle, when it was first sold to appellant, hence the

appellees' cannot further win on that claim and they should not be allowed to escape the liabilities for sustained injuries from its product.

The appellees' personal attacks against a pro'se injured plaintiff is further proof of their malicious intent to refuse appellant the opportunity to have a new trial, to determine how much the liability is by a jury of his peers.

This honorable court should recognize the issues here, where a prima-facia case against appellees' already exists, based upon documented facts in the record;

1- The Lemon Law verdict form, attached as exhibit O, where it depicts a disabling bio-mechanical defect existed.

2- There is further the work orders which describe an irregular vibration repairs.

3- There is medical testimony and doctor reports to suggest an injury occurred and those injuries correlate to injuries associated to truck drivers and railroad workers who are exposed to elevated whole body vibrations, which the subject vehicle was diagnosed with an elevated vibration that required several nonconformity repairs, where the repairs as described by appellees' could not fix or control the elevated vibration surges produced from the subject motor vehicle.

The appellees' intent to smear appellant with a vexatious litigant label,

should be quashed, where it is the appellees' attorneys' that are preventing this proceeding to continue in Circuit Court, because they cannot prevail the liabilities and injuries it caused to its victim and consumer Mr. Sherif Kodsy.

The appellees' are not immune as they claim, because they continue to do business in manufacturing and selling cars and trucks.

Appellant, should not be required to provide a $35,000.00 deposit to continue to another trial, it is the appellees' Bankruptcy filing, that hindered and limited the prosecution against it, the first time, hence appellant should not be penalized for the defendants, wealth and malicious representations to avoid liability to its creditors.

This honorable court should recognize the burden placed on a pro'se and injured plaintiff, where the financial and legal resources are limited for prosecution against a wealthy organization that filed chapter 11 bankruptcy, where a security deposit should not be required to continue, instead it is the appellees' according to the circumstances herein that should be required to pay and provide a security to its injured and now disabled plaintiff/appellant, because of its defective product as sold as is without warnings.

This honorable court should consider all the facts where a **prima-facia** case does exist herein, where it is not really necessary to re-litigate the issues of a defective motor vehicle that was released to appellant which caused

injuries, because it already was tried in a Lemon law proceeding,
documenting a bio-mechanical defect existed (whole body elevated
vibration) and remains as an inherent feature and remains as an unmeasured
bio-mechanical nonconformity in design and safety of the subject vehicle.

## ARGUMENT

According to chapter 363(f), A purchaser of a corporation's assets is not
usually subject to the liabilities of the selling entity.  Generally, however,
successor liability will apply to the purchaser if:

(i)     there is an express or implied agreement of the buyer to assume
liabilities of the seller,

(ii)    there is effectively a merger or consolidation of the selling and
buying entities;

(iii)   the purchase of the seller's assets or operations amounts to a "mere
continuation" of the seller's business, or

(iv) the sale was effected for the purpose of fraudulently escaping
liability on the seller's debts.

The appellees' are and should remain responsible for their continued
Defective product manufacturing and remain liable for the injuries sustained
by its consumer, because the appellees' merger and consolidation was for
the purpose of fraudulently escaping liabilities on the seller's debts, where

5

its merger and consolidation is a mere continuation of the seller's business.

_In re **Grumman Olson Indus.,**_**445 B.R. 243 (Bankr. S.D.N.Y.2011)**

**("BR Ct. Op.").** The Fredericos argue that Morgan is liable under New

Jersey successor liability law because it continued to manufacture and

market the same product line and **[467 B.R. 701]** actively exploited the good

will in the Grumman Olson name.

A recent decision by a New York State court has expanded the potential

liability of successor corporations under New York law by adopting the

"product line" exception to the doctrine of successor corporate liability. In

**Hart v. Bruno Machinery Corporation,** the Appellate Division, Third

Department, ruled that a successor corporation can be held strictly liable for

injuries caused by products manufactured by a corporation from which it

purchased assets. The Hart court thus joins other courts in California, New

Jersey, New Mexico, and Pennsylvania in adopting the "product line" theory

of successor corporate liability.

1. The defendant was the manufacturer/distributor/retailer of the product;

2. Use of the product in a manner reasonably foreseeable to the manufacturer

involves a substantial danger that would not be readily recognized by the

ordinary user of the product;

3. The manufacturer knew, or should have known, of the danger given the

generally recognized and prevailing scientific knowledge available at the

time of the manufacture and distribution;

4. The defendant failed to provide an adequate warning against the danger created by the reasonably foreseeable use, i.e., defendant failed to adequately warn against the specific risk of harm created by the danger;

5. The defendant failed to provide adequate instruction to avoid the danger;

6. The injury would not have occurred if adequate warning and instruction had been provided; and

7. The injury resulted from a use of the product that was reasonably foreseeable to the defendant.

In **Heard v. Sheahan**, Judge Posner returned to the continuing violations doctrine while addressing a claim brought under **42 U.S.C. § 1983**. In Heard, a state prisoner alleged that prison staffers were deliberately indifferent to his medical needs by denying him treatment for his hernia over an extended period of time. The Heard court initially surmised that each day of unnecessarily prolonged pain marked a "fresh infliction of punishment that caused the statute of limitations to start running anew." Although this language describes a modified continuing violation, the court ultimately applied the pure form of the doctrine to the plaintiff's claim. The court resolved that "all the pain after the date of onset, as it were, of deliberate indifference was fair game for the plaintiff's suit" under this theory.

The product, the subject vehicle differed from other units of the same

product line. **Beck, 593 P.2d at 881.**

## CONCLUSION

The plaintiff/appellant herein had demonstrated that the product failed to

perform as safely as an ordinary consumer would expect when used in an

intended or reasonably foreseeable manner [consumer expectation test], and

the plaintiff proved that the product's design proximately caused his injury

and the defendant fails to prove that on balance the benefits of the

challenged design outweighed the risk of danger inherent in such design

[risk benefit test]. **General Motors Corp. v. Farnsworth, 965 P.2d 1209,**

**1220 (Alaska 1998); Caterpillar Tractor Co. v. Beck, 593 P.2d 871**

**(Alaska 1979).**

The appellees' should not be rewarded for their defective product

design, where it should have known the dangers associated with its

defective product, where it failed to warn its consumer of the health

risks associated to being overly vibrated from a large engine design and not

sufficiently insulated, unconfirmed or defective design.

The doctrine of **res ipsa loquitur** permits, but does not compel, an

inference of negligence from the circumstances of an injury. The doctrine

should be applied when: (1) the accident is one which ordinarily does not

occur in the absence of someone's negligence; (2) the agency or instrumentality is within the exclusive control of the defendant; and (3) the injurious condition or occurrence was not due to any voluntary action or contribution on the part of the plaintiff. **Widmyer, 584 P.2d at 11 (footnote omitted).**

By shifting the burden of production of evidence to the defendant without relieving the plaintiff of the burden of proof, the doctrine makes recovery possible where the circumstances render proof of the defendant's specific act of negligence impracticable and the defendant is the party in the superior, if not the only, position to determine the cause of an accident. **Ferrell v. Baxter, 484 P.2d 250, 258 (Alaska 1971).** Uncontradicted proof of specific acts of negligence which completely explain the circumstances and cause of the accident renders the doctrine superfluous and inapplicable. **Widmyer, 584 P.2d at 11-12; State Farm Fire & Cas. Co. v. Municipality of Anchorage, 788 P.2d 726, 730 (Alaska 1990).**

A manufacturer has a duty to warn if the use of the product in a manner that is reasonably foreseeable by the defendant involves a substantial danger that would not be readily recognized by the ordinary user of the product and the manufacturer fails to provide adequate warning of such danger. **Prince v. Parachutes, Inc., 685 P.2d 83 (Alaska 1984); Shanks v Upjohn Co., 835**

**P.2d 1189 (Alaska 1992).** There is no duty to warn as to open and obvious dangers. Id.

**A successor corporation can be held liable for the torts of a prior corporation** if

(a) the successor agrees to assume liabilities;

(b) when the purchase amounts to a consolidation or merger;

(c) where the purchasing company is a "mere continuation" of the selling company; and

(d) when the sale is a sham to avoid liabilities. In addition, there are three additional "Modern" exceptions:

(e) continuity of existence;

(f) product line; and

(g) "duty to warn."

**Savage Arms Inc. v. Western Auto Supply Co., 18 P.3d 49 (Alaska 2001).**

In further defenses plaintiff/appellant denies to be a vexatious litigant, plaintiff, is and was a CERTFIED AND LICENSED INDOOR ENVIRONMENTAL CONTRACTOR THAT OWNED AND OPERATED A FIVE TRUCK BUSINESS ON AN EMERGENCY BASIS FOR WATER DAMAGE AND MOLD CLEANING AND REMEDIATIONS,

SANITIZATION, INSPECTIONS AND AIR SAMPLING, which
required the subject vehicle a large truck for long hours on the road.

Soon after the purchase and continued use of the subject vehicle within
hours of use migraine headaches developed and the elevated vibrations were
evident and required a repair and another and another without an
improvement, then it was alleged as normal characteristic for the design,
with careless disregard to health and safety.

Plaintiff/appellant, met all time limitations on all other civil proceedings,
where although the battle was initially lost on them the war is not over,
because they were legitimist claims that can be later amended and were filed
after the initial suit against General Motors Corporation and its successors,
where plaintiff had very limited legal understandings and financial
resources.

Plaintiff/appellant, is not an attorney and has no extra money to pay and
file anything, I stayed home in bed for almost two years without any income
because of this subject bio-mechanical defect in the subject vehicle, which
has caused me a lot of pains, grief and discrimination from all parties, where
plaintiff was conspired against for being a pro'se and an exfelon and for
bringing forth a proceeding unrepresented by counsel, where plaintiff was
only seeking a fair proceeding, not a malicious attack of being for bringing

forth a claim for documented injuries in evidence.

This is not a lawyer's game to me, it took me more than two weeks to be able to sit down for a day to write this response, the costs associated with such a luxury of a computer in a quite and serene setting is now very rare to me because I do not have the financial serenity to be fortunate in accessibly avail such surroundings on a very limited income, however my intent was to clarify the issues herein for the defective product that hurt me without any warnings and which continued to cause injuries even after it was alleged to be repaired.

Plaintiff/appellant, prays that this honorable court would recognize this request for relief, where plaintiff/appellant brought forth this proceeding in good faith and for good cause,

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING

INSTRUMENT WAS E-MAILED AND MAILED BY U.S. MAIL TO THE

DEFENDANTS' COUNSEL OF RECORD, ON MAY 2ND , 2014.


----------------------------------------

**SHERIF R. KODSY**
**APPELLANT/ PRO'SE**
**2231 HAYES STREET**
**HOLLYWOOD , FLORIDA, 33020**
**561-294-3046**
**<u>mildewproofing@aol.com</u>**


**cc;**
**WEIL, GOTSHAL AND MANGES, LLP., 767 FIFTH AVENUE**
**NEW YORK, NY 10153**

Exhibit - O -

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

SHERIF RAFIK KODSY,

      Plaintiff,

vs.

CASE NO.: 09-CA-011174

GENERAL MOTORS COMPANY
and MOTORS LIQUIDATION COMPANY,

      Defendants.

_____/

## VERDICT

We the jury, return the following verdict:

### *LEMON LAW*

1.    **Was there a defect or condition in the 2008 Hummer H2 which substantially impaired its use, value, or safety?**

YES_____✓_____                NO_____

If your answer to Question 1 is NO, your verdict on the Lemon Law claim is for Defendant and you should proceed to Question 5. If your answer to Question 1 is YES, please answer Question 2.

2.    **Did General Motors eliminate the nonconformity and conform the 2008 Hummer H2 to its warranty after reasonable number of attempts?**

YES_____✓_____                NO_____

If your answer to Question 2 is YES, your verdict on the Lemon Law claim is for Defendant and you should proceed to question 5. If your answer to Question 2 is NO, your verdict on the Lemon Law claim is for Plaintiff and you should answer question 3.

CFN 20100416625, OR BK 24171 PG 1595, RECORDED 11/02/2010 14:50:29
Sharon R. Bock, CLERK & COMPTROLLER, Palm Beach County, NUM OF PAGES 3

FILED
10 OCT 28 PM 5:06
SHARON R. BOCK, CLERK
PALM BEACH COUNTY, FL
CIRCUIT CIVIL 8



UNITED STATES POSTAL SERVICE

EXPRESS MAIL

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

FROM: (PLEASE PRINT)
Sharif Rodey
5931 Hayes Street
Hollywood Fl. 33020

TO: (PLEASE PRINT)
U.S. District Court
Southern District of NY
500 Pearl Street
New York, N.Y. 10007

Flat Rate Envelope

EXTREMELY URGENT

PRIORITY
* MAIL *
EXPRESS

MAY - 6 2014
PRO SE OFFICE

Pro se
5/5